Spencer *vs.* The State.

STROZIER, for plaintiff in error.

LYON and CLARK, for defendant.

---

No. 86.—THOMAS SPENCER, plaintiff in error, *vs.* THE STATE OF GEORGIA.

[1.] By consent of parties, a Jury, although sworn and charged, in a case of life, may be discharged without a verdict, and a mis-trial be declared.

Indictment for murder, in Lee Superior Court. Tried before Judge PERKINS, June Term, 1854.

' This was a motion to discharge the prisoner from farther attendance upon this indictment, upon the following state of facts:

The prisoner was placed upon his trial, at November Term, 1853. On Saturday of the first week, in consequence of the impossibility to conclude the trial before Sabbath, and the extreme illness of one of the Jurors selected, before any of the evidence was submitted, or the indictment was read, the counsel for the State and the prisoner, consented, in writing, that the Jury might disperse, and resume the trial of the cause on the succeeding Monday morning, " and that no exceptions shall or will be taken to such separation, such exceptions being waived". The Court passed an order accordingly.

On the following Monday morning, one of the Jurors did not appear at the hour appointed by the Court, and continued absent until 2 o'clock, P. M. when, no tidings being received from him, the Court passed an order, without the consent of prisoner or his counsel, declaring a mis-trial.

The Court below refused to discharge the prisoner, and this decision is assigned as error.

HARRISON and HAWKINS, for plaintiff in error.

LYON, Sol. Gen. for defendant.

*By the Court.*—BENNING J., delivering the opinion.

[1.] The general rule, that " a Jury, sworn and charged, in case of life or member, cannot be discharged by the Court or any other, but they ought to give a verdict". (2 *Coke Litt.* 227, *b.*) is subject to some exceptions. Such are cases of necessity and cases of agreement by the parties. *Lancton vs. The State*, (14 *Ga. R.* 426.)

In this case, the parties agreed for the Jury to " separate and go to their homes, or elsewhere, as they" should "respectively choose, and return to Court and resume the trial, on Monday morning". In this agreement, it is necessarily implied, that if any of the Jurors, who thus had the consent of both par-

ties, to go where they chose, should fail to return at the appointed time, such failure should hurt one party no more than the other.

This agreement the Court sanctioned, and in accordance with it, made an order.

The Jury then separated, and one of them failed to return at the time appointed.

Now, that this failure might not hurt one party more than the other, what was the Court to do? Declare a mis-trial. That would, as nearly as possible, put things in the same condition in which they were before the attempt at a trial—and so, would, as nearly as possible, hurt one party no more than the other. And this the Court did.

It was argued that the Court should have waited awhile, to see whether the Juror would not return. But no reason was given to the Court, to justify an expectation that the Juror would ever return, much less, that he would soon return; and to wait upon him, would have been to embarrass, if not obstruct the other business of the Court. Waiting would certainly do some harm; and would not, judging from the things that were in sight, do any good. The Court, therefore, instead of being bound to wait, was rather bound not to wait. Nothing in the agreement required it to wait.

The judgment of the Court below, ought, therefore, to be affirmed.

It is not necessary to consider the question, whether, in this case, the Jury were "charged", in the sense of the general rule.